## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM SPIESS; KASHEEN     :   No. 3:10cv287
THOMAS; GENE THOMAS, II;    :
JALEEL HOLDEN; and JOSE      :   (Judge Munley)
LACEN,                    :
        **Plaintiffs**     :
       **v.**            :
                       :
POCONO MOUNTAIN        :
REGIONAL POLICE DEPT.,     :
TOBYHANNA TWP., MOUNT   :
POCONO BOROUGH,        :
TUNKHANNOCK TWP.,       :
COOLBAUGH TWP., CHIEF    :
HARRY W. LEWIS, RICHARD  :
W. LUTHCKE, JOHN P.      :
BOHRMAN, LUCAS BRAY,   :
CHRIS WAGNER, KENNETH  :
LENNING, MONROE COUNTY, :
MONROE COUNTY DISTRICT  :
ATTORNEY'S OFF., D.A. E.   :
DAVID CHRISTINE JR., A.D.A. :
MICHAEL RAKACZEWSKI,   :
DET. WENDY BENTZONI,    :
         **Defendants**   :

## MEMORANDUM

Before the court is the motion to dismiss the complaint (Doc. 10) filed by Defendants Monroe County, the Monroe County District Attorney's Office, District Attorney E. David Christine Jr., Assistant District Attorney Michael Rakaczewski, and Detective Wendy Bentzoni. The motion has been fully briefed and is ripe for disposition.

## BACKGROUND

Plaintiffs William Spiess ("Spiess"), Kasheen Thomas, Gene Thomas, II, Jaleel Holden ("Holden") and Jose Lacen ("Lacen") bring this section 1983 action alleging that the defendants violated their civil rights. The plaintiffs were arrested and charged with raping two girls– sixteen year

old AJ and fifteen year old TM– on the night of February 9, 2008.[1] (Compl. ¶ 1; Pocono Mountain Regional Police Department Incident Report at 1 (Doc. 1-4 at 2); Prelim. Hr'g Tr. at 130 (Doc. 1-8 at 36)). Spiess alleges that he did not engage in any sexual acts with either girl. (Compl. ¶ 38). The remaining plaintiffs allege that they engaged only in consensual sex acts with the two girls. (Id.)

On the morning of February 11, 2008, the two girls went to the Pocono Mountain Regional Police Department. (Compl. ¶¶ 46, 12). The plaintiffs allege that the two girls were interviewed separately and gave substantially conflicting stories regarding what had occurred on February 9, 2008. (Id. ¶¶ 47, 48). The girls' statements allegedly differed as follows:

1.  AJ stated that the girls snuck out from her grandmother's house because TM wanted to see her boyfriend, Lacen. TM stated they snuck out because Lacen and Spiess threatened to harm AJ's grandmother. (Id. ¶ 48).

2.  AJ named, in addition to the plaintiffs, five other youths– "[JJ], [MM], a second Billy, Marcus, and [JC]"– as being among her attackers. TM did not corroborate this statement. (Id.)

3.  AJ stated that TM voluntarily smoked marijuana at Lacen's residence. TM stated that she was forced to smoke marijuana. (Id.)

4.  AJ stated that a boy named Marcus drove them home in Spiess' red truck and that Marcus had been at Lacen's residence the entire night. TM stated that the person who drove them home arrived afterwards and drove a black car. (Id.)

---

[1] Though these minor individuals are named in the plaintiffs' Complaint, the court will identify them only by their initials. See Local Rule 5.2(d)(2); FEDERAL RULE OF CIVIL PROCEDURE 5.2.

5.   AJ accused Spiess of undressing and raping her.  TM stated that Spiess sat and watched, but did not touch either girl.  (Id.)

6.   AJ stated that she was taken to another room, separate from TM.  TM stated that she and AJ were in the same room during the assaults.  (Id.)

7.   AJ stated that she was raped by everyone at Lacen's residence, except for Marcus.  TM stated that only Lacen had sex with AJ.  (Id.)

8.   AJ stated that the plaintiffs were drinking.  TM denied that alcohol was present.  (Id.)

9.   AJ stated that a knife was held to her throat during the assaults.  TM stated that no weapons were used.  (Id.)

The plaintiffs allege that AJ had made two previous complaints of sexual molestation against a family member to the Pocono Mountain Regional Police Department.  (Compl. ¶ 57).  These alleged complaints were made in the Spring of 2006 and October 31, 2007 and were investigated by the Monroe County District Attorney's Office.  (Id.)  The plaintiffs alleged that the Defendant Detectives Lutchke, Borhman, Bray, Lenning, Wagner, and Bentzoni (the "Defendant Detectives") as well as Assistant District Attorney Michael Rakaczewski ("ADA Rakaczewski") were involved in these prior rape allegations and "were fully aware of AJ's mental health issues and that she had a history of reporting unfounded rape allegations . . . [and that] she was a pathological liar."  (Id. ¶ 63).  Ultimately, these prior complaints were allegedly either recanted or closed as unfounded after detectives interviewed the girl's family and investigated her treatment at mental health facilities.  (Id. ¶¶ 58, 59, 60, 61, 62).  The plaintiffs note that on December 3, 2007, Children and Youth Services closed the second abuse allegation as being unfounded and notified Detective Bohrman.  (Id. ¶ 62).  Borhman forwarded the file on the second

3

abuse allegation to ADA Rakaczewski who declined to prosecute the family member– approximately two months before the alleged event underlying this case. (Id. ¶¶ 62, 63).

The plaintiffs allege that a forensic interview and examination of AJ by Dr. Andi Taroli, a forensic pediatrician, was inconsistent with her allegations of rape. (Compl. ¶ 66, 67). Specifically, plaintiffs allege that the results of her medical examination were completely inconsistent with her claim of being sodomized. (Id. ¶ 69). While AJ claimed to have been bleeding from her rectum, the medical examination indicated no tissue damage. (Id.) The plaintiffs allege that Dr. Taroli's findings were consistent with consensual sex, corroborating the plaintiffs' accounts. (Id. ¶ 91). Finally, an examination of Spiess's body contradicted AJ's statement that she had left scratches on his stomach. (Id. ¶¶ 54, 87).

The plaintiffs allege that, despite the apparent inconsistencies and with knowledge of AJ's history of unfounded sexual assault allegations, the Defendant Detectives, Chief Lewis and ADA Rakaczewski took the girls' statements as an opportunity to appear responsive to violent crime and gangs. (Compl. ¶¶ 52, 55, 63, 81, 82, 83, 84, 94, 95). The plaintiffs also allege that their treatment by the defendants was racially motivated– with the exception of Spiess, the plaintiffs are either African American or Hispanic. (Id. ¶¶ 5, 55).

The plaintiffs allege that the Defendant Detectives, Chief Lewis and ADA Rakaczewski "crafted affidavits of probable cause wherein they knowingly[,] deliberately, or with reckless disregard for the truth, concealed material facts and exculpatory evidence while, at the same time, including statements that they knew or should have known were false." (Compl. ¶ 96). Specifically, these defendants allegedly designed the affidavit to hide inconsistencies in the girls' statements. (Id. ¶ 97). The plaintiffs allege

that the Defendant Detectives, Chief Lewis and ADA Rakaczewski withheld facts contradicting or undermining their affidavit, including the following: AJ's history of false sexual assault complaints, AJ's history of mental illness, statements of family members that AJ was pathological liar, the fact that the plaintiffs gave consistent statements, and the fact that video surveillance conflicted with girls' statements about where they stopped on the way to the Lacen residence. (Id. ¶ 98). The plaintiffs allege that, at the time of the initial interviews, the Defendant Detectives, Chief Lewis and the District Attorney's Office had a statement signed by TM and her parents indicating that Plaintiff Spiess was not involved in the rape. (Id. ¶ 85).

Detectives arrested Lacen on February 12, 2008. (Compl. ¶ 70). Spiess, Kasheen Thomas and Gene Thomas, II, were arrested on February 25, 2008. (Id.) Holden was arrested on March 24, 2008. (Id.) The plaintiffs "were charged with, inter alia, multiple felony counts of forcible rape, conspiracy to commit forcible rape, conspiracy to commit involuntary deviate sexual intercourse, and sexual assault." (Id. ¶ 77). Plaintiffs allege that their arrest and charges received widespread and harmful media coverage. (Id.)

The plaintiffs also allege that Rakaczewski and the Defendant Detectives encouraged the girls to confer to iron out their stories before testifying at the preliminary hearing before a magistrate to bind the plaintiffs over for trial. (Compl. ¶ 101). The plaintiffs allege that the defendants did not drop their charges even after the two girls gave testimony in the preliminary hearing which contradicted their earlier statements or other evidence. (Id. ¶ 102). The plaintiffs could not afford bail, which was set at $250,000.00, and were held at the Monroe County Correctional Facility. (Id. ¶¶ 77, 78). Ultimately, the charges against the

plaintiffs were dropped on the eve of trial. (Id. ¶ 108). AJ and TM allegedly admitted that their rape accusations were false. (Id. ¶ 5).

The plaintiffs allege that District Attorney E. David Christine Jr. ("DA Christine"), "in his administrative / supervisory capacity as the District Attorney of Monroe County" was a "duly authorized policymaker of Monroe County for purposes of municipal liability." (Compl. ¶¶ 173, 174). Plaintiffs further allege that DA Christine, acting under color of state law, was deliberately indifferent to the rights of criminal suspects "by failing and / or refusing to adopt, enact, establish and/or implement policies and / or procedures to militate against the . . . abuse of power by assistant district attorneys and / or detectives" and "by failing and / or refusing to supervise said assistant district attorneys and / or detectives to further militate against the . . . abuse of their power." (Id. ¶ 177). Plaintiffs allege that DA Christines's failures caused violations of their constitutional rights and that these violations were foreseeable. (Id. ¶¶ 178, 179).

The plaintiffs filed the instant complaint on February 8, 2010, alleging seven counts. (Compl.). Count I, brought under section 1983, claims unlawful seizure and false imprisonment against the Defendant Detectives and Chief Lewis in their individual capacities. (Id. ¶¶ 30, 119 - 127). Count II, brought under section 1983, claims unlawful seizure and ADA Rakaczewski in his "investigative capacity." (Id. ¶¶ 128 - 138). Count III, brought under section 1983, claims conspiracy to unlawfully seize the plaintiffs against [the Defendant Detectives, Chief Lewis] and ADA Rakaczewski in his "investigative capacity." (Id. ¶¶ 139 - 145). Count IV, brought under section 1983, claims malicious prosecution against the Defendant Detectives and Chief Lewis in their individual capacities. (Id. ¶¶ 146 - 156). Count V, brought under section 1983, claims conspiracy to unlawfully seize, falsely imprison, and maliciously prosecute. (Id. ¶¶ 157 -

163).  Count VI, brought under section 1983, claims municipal liability against the Mount Pocono Regional Police Department, Tobyhanna, Mount Pocono, Tunkhannock, Coolbaugh, and Chief Lewis in his official capacity (Id. ¶¶ 17, 164 - 171).  Finally, Count VII, brought under section 1983, claims municipal liability against Monroe County, the Monroe County District Attorney's Office, and DA Christine in his administrative capacity. (Id. ¶¶ 172 - 179).  Defendants Monroe County, the Monroe County District Attorney's Office, District Attorney E. David Christine Jr., Assistant District Attorney Michael Rakaczewski, and Detective Wendy Bentzoni filed the instant motion to dismiss on March 8, 2010, bringing the case to its present posture.

**JURISDICTION**

The court has federal question jurisdiction over this civil rights action brought under 42 U.S.C. § 1983.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

**LEGAL STANDARD**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal

7

evidence of" each necessary element of the claims alleged in the complaint.  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 556).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  <u>Id.</u> at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" <u>Twombly</u>, 550 U.S. at 555 (citation omitted).  "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  <u>Phillips</u>, 515 F.3d at 232 (citation omitted).  "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief."  <u>Id.</u>

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  However, "we are not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Ashcroft v. Iqbal</u>, -- U.S. --,  129 S. Ct. 1937, 1949-50 (2009) (internal quotations omitted).

To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  <u>See</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997); <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192,

1196 (3d Cir. 1993).

**DISCUSSION**

Defendants Monroe County, the Monroe County District Attorney's Office, District Attorney E. David Christine Jr., Assistant District Attorney Michael Rakaczewski, and Detective Wendy Bentzoni each seek dismissal of the claims against them. We will address the plaintiffs' respective claims against them in the order they are listed in the complaint.

**I. Counts II and III: § 1983 Claims for Unlawful Seizure and Conspiracy to Unlawfully Seize Against ADA Rakaczewski**[2]

ADA Rakaczewski argues that he has absolute immunity from suits brought against him for acts taken in his prosecutorial capacity. He argues that the act of preparing an affidavit is the initiation of a prosecution and part of the judicial phase of a prosecution, and no longer investigative. He argues that the handling of evidence is a prosecutorial function. The plaintiffs note that they have only alleged facts relating to Rakaczewski's pre-arrest activities, which they argue are investigative in nature. The plaintiffs argue that directing the police and gathering evidence are investigative acts– not prosecutorial.

"We must begin with '[t]he presumption ... that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties' and the observation that the Supreme Court has

_____

[2] The plaintiffs clarify, in their briefs, that they have not brought a malicious prosecution claim against ADA Rakaczewski. (Pls.'s Br. Opp. 19 n.4 (Doc. 21 at 23)). Insofar as the plaintiffs' complaint does not state that Counts II and III are brought against ADA Rakaczewski in his official capacity, we interpret them as being brought against him in his individual capacity, and are not duplicative of plaintiffs' claims against Monroe County.

been 'quite sparing' in its recognition of absolute immunity."  Carter v. City of Philadelphia, 181 F.3d 339, 355 (3d Cir. 1999) (quoting Burns v. Reed, 500 U.S. 478, 486-87 (1991)).  ADA Rakaczewski, as the official seeking to invoke absolute immunity, bears the burden of proving that such immunity is justified.  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).

"Prosecutors are immune from suit under section 1983 for 'initiating and pursuing a criminal prosecution.'"  Carter, 181 F.3d at 355 (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)).  The Supreme Court, in Imbler, immunized a prosecutor's initiation and presentation of the state's case from civil suits for damages under section 1983.  424 U.S. at 430-31.  See also Rose v. Bartle, 871 F.2d 331, 347 n.12 (3d Cir. 1989) (decision to initiate prosecution immunized even when the prosecutor has no good faith belief of wrongdoing).  Immunity also extends to "'the preparation necessary to present a case,' and this includes the 'obtaining, reviewing, and evaluation of evidence.'"  Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992) (quoting Schrob v. Catterson, 948 F.2d 1402, 1414 (3d Cir. 1991); Forsyth v. Kleindienst, 599 F.2d 1203, 1213 (3d Cir. 1979)).

However, not all actions of a prosecutor are immunized.  Instead,

> "prosecutors are subject to varying levels of official immunity" and absolute prosecutorial immunity attaches only to actions performed in a 'quasi-judicial' role", such as participation in court proceedings and other conduct "intimately associated with the judicial phases" of litigation. Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir.1994) (quoting Imbler, 424 U.S. at 430).  "By contrast, a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity."  Id. (citing Imbler, 424 U.S. at 430-31; Burns, 500 U.S. at 483-84 n. 2).

Carter, 181 F.3d at 356.  Thus, "[m]erely investigative evidence gathering is not absolutely protected."  Kulwicki, 969 F.2d at 1465.  The United States Court of Appeals for the Third Circuit, in Giuffre, held that a prosecutor does not enjoy absolute immunity for giving advice to police

10

during an investigation leading up to a criminal proceeding. 31 F.3d at 1253. A rough rule for finding the investigative / prosecutorial divide regarding the gathering of evidence is the filing of a complaint. <u>See</u> <u>Kulwicki</u>, 969 F.2d at 1465 (holding that "[e]vidence gleaned prior to the filing is deemed investigative," "directing evidence-gathering" by police is investigative, and "giving probable cause advice" to police is investigative).

Finally, the mere fact that a prosecution is formally initiated does not mean that all investigatory acts preceding the filing of charges are entitled to immunity. <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 276 (1993) ("A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial.").

In this case, plaintiffs allege that ADA Rakaczewski, with recent knowledge of AJ's prior unfounded claims, worked with detectives to create an affidavit of probable cause which concealed facts indicating inconsistent victim statements and physical examinations. We determine that ADA Rakaczewski has not satisfied his burden of overcoming the presumption against absolute immunity at this stage. We find, based on the allegations of the complaint, that crafting this affidavit of probable cause was not so intimately involved with the judicial phases of this prosecution such that ADA Rakaczewski is entitled to absolute immunity. Rather, reading the complaint in a light most favorable to the plaintiffs, the complaint plausibly alleges that ADA Rakaczewski's actions were akin to merely advising officers as to probable cause or directing the gathering of evidence in an investigative capacity. The actions alleged here, in light of the rough

temporal guideline of <u>Kulwicki</u> and <u>Buckley</u>'s warning that an eventual filing of charges does not necessarily immunize all investigative actions, indicate that the pre-complaint gathering of evidence and evaluation of probable cause were investigative in nature and deserving only qualified immunity.[3] For these reasons, defendants' motion to dismiss Counts II and III against ADA Rakaczewski will be denied.

## II. Count IV: § 1983 Claim for Malicious Prosecution Against Detective Bentzoni

Defendant Detective Bentzoni argues that she has prosecutorial immunity for a claim of malicious prosecution. She notes that her actions as a detective are a prosecutorial function. The plaintiffs respond that, like ADA Rakaczewski, Detective Bentzoni is being sued for her pre-arrest actions, which are investigative functions. Because the allegations against the Defendant Detectives– including Detective Bentzoni– are almost identical to those brought against ADA Rakaczewski, the analysis given above with respect to Counts II and III against ADA Rakaczewski is equally applicable here. Accordingly, we will deny the defendants' motion with respect to Detective Bentzoni.

## III. Count VII: § 1983 Claim for Administrative / Supervisory Liability

---

[3] Where an officer of the state does not have absolute immunity, he may still avail himself of qualified immunity so long as "the officer's behavior was 'objectively reasonable' in light of the constitutional rights affected." <u>Giuffre</u>, 31 F.3d at 1252 (quoting <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1109 (3d Cir. 1990)). ADA Rakaczewski has not argued that he is entitled to qualified immunity, therefore we will not address such an argument at this stage.

**Against Monroe County and the Monroe County DA Christine[4]**

The plaintiffs allege that DA Christine, "in his administrative / supervisory capacity as the District Attorney of Monroe County" was a "duly authorized policymaker of Monroe County for purposes of municipal liability." (Compl. ¶¶ 173, 174). The plaintiffs further allege that DA Christine, acting under color of state law, was deliberately indifferent to the rights of criminal suspects "by failing and / or refusing to adopt, enact, establish and / or implement policies and / or procedures to militate against the . . . abuse of power by assistant district attorneys and / or detectives" and "by failing and / or refusing to supervise said assistant district attorneys and / or detectives to further militate against the . . . abuse of their power." (Id. ¶ 177). We will address the defendants' arguments on behalf of the county and the district attorney in turn.

**1. Defendant Monroe County**

Defendant Monroe County (the "County") argues that, because DA Christine was prosecuting a criminal case and criminal prosecutions are a function of the Commonwealth, the County cannot be held liable for his actions. Essentially, in the context of municipal liability under <u>Monell v. Dept. of Soc. Servs. of New York</u>, 436 U.S. 658 (1978), the County argues that it cannot be liable for DA Christine's actions or policies relating to prosecution because those are inherently not functions of a county– it can only be liable when DA Christine takes actions as a *county* policymaker. The plaintiffs respond that they are not suing the County for DA Christine's prosecutorial actions, but for his administrative and supervisory actions, for

_____

[4] The plaintiffs have voluntarily dismissed their claims in Count VII against Defendant Monroe County District Attorney's Office. (Pls.'s Br. Opp. 25, (Doc. 21)). Accordingly, the defendants' motion to dismiss will be granted as unopposed.

which a county can be liable.  (Compl. ¶¶ 26, 173).

Though the defendants have not moved to dismiss based on the plaintiffs' prima facie case of municipal liability, a brief recital of the law is helpful to understand the context of the following analysis.  Municipal liability under 42 U.S.C. § 1983 is available only under certain circumstances.  The standard first articulated in Monell, provides that "local governing bodies . . . can be sued directly under §1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  436 U.S. at 690.  Thus, "[a] public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy."  Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997).  Case law following Monell has delineated three ways in which a municipality may be held liable for the constitutional torts of its employee:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, Jett v. Dallas Independent School District, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).  Based on the plaintiffs' allegations, the second path to liability is the appropriate analysis. Under Pembaur, "municipal liability may be imposed for a single decision

14

by municipal policymakers under appropriate circumstances." 475 U.S. at 480. "Where, as here, the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter, 181 F.3d at 357 (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

Finally, a plaintiff must show causation. Liability exists only when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton, 489 U.S. at 385).

Here, the plaintiffs have clearly alleged that DA Christine is a policymaker and complain, most specifically, about his failure to adopt policies or implement training for the assistant district attorneys and detectives under his supervision regarding the prevention of their abuse of power and their handling of sexual assault investigations. The County does not appear to dispute that DA Christine had policy-making authority, only that he was making policy on behalf of the Commonwealth when prosecuting.

In order to determine whether DA Christine was making policy on behalf of the County or the Commonwealth, we must follow the analysis of McMillian v. Monroe County, 520 U.S. 781, 785 (1997) ("A court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989))). In making this determination we must consider "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue" in light of state law. McMillian, 520

U.S. at 785 - 86.

Preliminarily, the Pennsylvania Constitution defines district attorneys as county officers. PA. CONST. art IX, § 4; <u>See also</u> <u>Chalfin v. Specter</u>, 233 A.2d 562, 565 (Pa. 1967) ("The aforesaid language of the Constitution of Pennsylvania is, we repeat, crystal clear. It states in the clearest imaginable language that District Attorneys are County-not State-officers. . . .").

Examining the particular job functions of a district attorney, the County is correct that a district attorney's actions in prosecuting a criminal case are a function of the state for purposes of municipal liability. <u>See</u>, e.g. <u>Williams v. Fedor</u>, 69 F. Supp. 2d 649, 663 (M.D. Pa. 1999) (Vanaskie, J.) <u>aff'd</u>, 211 F.3d 1263 tbl. (3d Cir. 2000).[5]  In the context of Eleventh

_____

[5] The County cites <u>Williams v. Fedor</u>, 69 F. Supp. 2d 649 (M.D. Pa. 1999) for the proposition that Pennsylvania law does not grant law enforcement or prosecutorial authority to the counties.  The County contends that this proposition dictated Judge Vanaskie's grant of summary judgment against municipal liability claims based on a district attorney's prosecutorial decisions, failure to train, and failure to supervise.  A fuller reading of that opinion, however, supports the plaintiffs' position.  While the fact that Pennsylvania law vests prosecutorial authority in the Commonwealth required a finding that the county in that case could not be held liable for a district attorney's prosecutorial decisions, the plaintiff in that case, as here, also brought claims under a second theory– failure to train and supervise.  <u>Id.</u> at 663 ("[I]t has generally been held that when the focus of the plaintiff's civil rights claims are on the administration of the district attorney's office, the district attorney is regarded as an official of the county so that the county may be held liable where the facts establish a failure to train or supervise that evidences a deliberate indifference to the rights of the plaintiff.").  That claim survived a motion to dismiss and was only dismissed at the summary judgment stage based on the facts adduced in discovery.  <u>Id.</u> at 664 - 65 ("In summary, state law with respect to the district attorney's basic function of enforcing Pennsylvania criminal

16

Amendment immunity, however, the United States Court of Appeals for the Third Circuit, in <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 352 - 53 (3d Cir. 1999), described Pennsylvania district attorneys as having a hybrid status– "[w]hen 'enforcing their sworn duties to enforce the law ... they act as agents of the State [but] when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions ... the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.'" (quoting <u>Coleman v. Kaye</u>, 87 F.3d 1491, 1499 (3d Cir. 1996)).  While this status characterization for Eleventh Amendment purposes is not determinative in the municipal liability context, we find it persuasive.  <u>See also</u> <u>Bergdoll v. City of York</u>, No. 1:08CV1879, 2009 WL 3698023, *5 (M.D. Pa. Nov. 3, 2009) (finding, in motion to dismiss context, that district attorney was a county policymaker with regard to the function of advising police on complaints of police misconduct and the function of guiding training on the same).

This court has also noted that when a plaintiff claims a failure to train or supervise by a district attorney, the nature of the function being taught or supervised informs the district attorney's status.  <u>Wallace v. Powell</u>, No. 3:09CV286, 2010 WL 785253, *5 (M.D. Pa. Mar. 1, 2010) (finding that when training subordinates to make direct prosecutorial decisions in the courtroom, as when making such decisions himself, a district attorney is a policymaker for the Commonwealth).

Addressing the allegations here, we determine--based on state law– that the plaintiffs have alleged that DA Christine was a final policymaker for Monroe County in the area of training and supervising assistant district

_____

law defeats Williams' first theory of liability against Monroe County, and the facts of record defeat his second theory of liability.").

attorneys and detectives with regard to sexual assault investigations and abuse of power.  The plaintiffs allege that the defendants "disregarded and concealed exculpatory evidence and disregarded clearly established criminal investigation training, practices and / or techniques."  (Id. ¶ 4).  They allege that DA Christine was a policymaker and administrator "responsible for the formulation and / or implementation of all practices, policies and procedures of the office; the discipline, assignment, training and supervision of staff, including assistant district attorneys and detectives; and all other day-to-day operations, oversight, command and control of the office."  (Id. ¶¶ 26, 174).  They further allege that DA Christine was responsible for the "assignment, control, command, oversight and supervision of assistant district attorneys and detectives involved in rape and assault investigations."  (Id. ¶ 176).  Finally, plaintiffs allege that DA Christine "demonstrated a deliberate indifference to the rights of potential criminal suspects" by failing to adopt policies "against the unbridled exercise and abuse of power by assistant district attorneys and / or detectives within the county's jurisdiction" or to supervise against the same.  (Id. ¶ 177).

The plaintiffs have alleged plausible claims of failure to train and supervise.  They have not made allegations based on any prosecutorial act of DA Christine.  Thus, the plaintiffs have taken care only to allege acts or omissions of DA Christine for which the County may be liable.  We note that the training and supervision alleged to be improper relates to investigative techniques, not to prosecutorial decisions or techniques.  See Wallace, 2010 WL 785253, *5.  Therefore, the plaintiffs have properly pleaded a claim of municipal liability under Monell against the County.  The defendants' motion to dismiss will be denied with respect to the County.

## 2. Defendant DA Christine

Defendants argue that claims brought by the plaintiffs against DA Christine in his official capacity should be dismissed because a suit against an individual defendant in his official capacity is equivalent to a suit against the municipality.  The court agrees.  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . ."  Monell, 436 U.S. at 691 n.55.  Such a suit is properly treated as a suit against the entity.  Kentucky v. Graham, 473 U.S. 159, 166, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under Monell . . . local government units can be sued directly for damages and injunctive or declaratory relief.").  Accordingly, the court will dismiss the claim against DA Christine, because it is brought against him in solely his official capacity, and duplicates the surviving claim against Monroe County.[6]

**CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss will be granted, in part, and denied, in part.  The motion will be granted with respect to Defendant Monroe County District Attorney's Office, having been voluntarily dismissed by the plaintiffs.  The motion will be granted with respect to Count VII against Defendant District Attorney Christine.  Accordingly, DA Christine will be dismissed from the case.  The motion will be denied with respected to all other parties and counts.  An appropriate order follows.

---

[6] Though plaintiffs' complaint did not clearly indicate whether DA Christine was being sued in his official or individual capacity, the plaintiffs have definitively stated in their briefs that Count VII sues Christine "solely in his official capacity as a final policymaker of Monroe County.  Plaintiffs have not sued District Attorney Christine in his personal capacity."  (Pls.'s Br. Opp. at 15 (Doc. 21 at 19); Compl. ¶ 174).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM SPIESS; KASHEEN
THOMAS; GENE THOMAS, II;
JALEEL HOLDEN; and JOSE
LACEN,
         **Plaintiffs**
         v.

POCONO MOUNTAIN
REGIONAL POLICE DEPT.,
TOBYHANNA TWP., MOUNT
POCONO BOROUGH,
TUNKHANNOCK TWP.,
COOLBAUGH TWP., CHIEF
HARRY W. LEWIS, RICHARD
W. LUTHCKE, JOHN P.
BOHRMAN, LUCAS BRAY,
CHRIS WAGNER, KENNETH
LENNING, MONROE COUNTY,
MONROE COUNTY DISTRICT
ATTORNEY'S OFF., D.A. E.
DAVID CHRISTINE, A.D.A.
MICHAEL RAKACZEWSKI,
DET. WENDY BENTZONI,
         **Defendants**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 3:10cv287

(Judge Munley)

## ORDER

    **AND NOW**, to wit, this  26th  day of July 2010, upon consideration of the motion to dismiss (Doc. 10) filed by Defendants Monroe County, the Monroe County District Attorney's Office, District Attorney E. David Christine Jr., Assistant District Attorney Michael Rakaczewski, and Detective Wendy Bentzoni, it is HEREBY **ORDERED** that the motion is **GRANTED**, in part, and **DENIED**, in part, as follows:

1.    The motion is **GRANTED** as unopposed with respect to Defendant Monroe County District Attorney's Office.  Defendant Monroe County District Attorney's Office is HEREBY **DISMISSED** from the case.

2.    The motion is **GRANTED** with respect to Defendant District Attorney E. David Christine.  Defendant District Attorney E. David Christine is

HEREBY **DISMISSED** from the case.

3.  The motion is **DENIED** with respect to Defendants Monroe County, Assistant District Attorney Michael Rakaczewski, and Detective Wendy Bentzoni.

**BY THE COURT:**


__s/ James M. Munley____

**JUDGE JAMES M. MUNLEY**
**United States District Court**