IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM SPIESS; KASHEEN THOMAS; GENE THOMAS, II; JALEEL HOLDEN and JOSE LACEN,<br>　　　　Plaintiffs<br>　　v.<br><br>MICHAEL RAKACZEWSKI, Esquire and WENDY BENTZONI<br>　　　　Defendants | :　No. 3:10cv287<br>:<br>:　(Judge Munley)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## **MEMORANDUM**

Before the court for disposition are the parties' motions in limine filed in advance of the pretrial conference. The motions have been fully briefed and are ripe for disposition. For the reasons that follow, the motions will be granted in part and denied in part.

**Background[1]**

On the morning of February 11, 2008, a sixteen-year-old girl, AJ, and a fifteen-year-old girl, TM, reported to the Pocono Mountain Regional Police Department that they had been sexually assaulted on February 9, 2008, by multiple men at a house party. Police officials interviewed the girls separately and, in describing the assaults they said were committed

---

[1] Because the following facts are undisputed, the court will forego citations to the record.

by the plaintiffs–William Spiess, Kasheen Thomas, Gene Thomas, II, Jaleel Holden, and Jose Lacen–they provided different accounts of what happened. Although their accounts varied, it is undisputed that the girls attended a party, that the plaintiffs attended the party, and that sexual activity occurred.

After the girls' interviews, Detective Richard Luthcke of the Pocono Mountain Regional Police Department and Defendant Wendy Bentzoni, a detective for the Monroe County District Attorney's Office, took AJ to the Pegasus Child Advocacy Center in Carbondale, Pennsylvania. Dr. Andrea Taroli examined AJ and opined that AJ had been sexually assaulted. Luthcke then called his supervisor, Detective Chris Wagner, regarding the alleged assault and brought Wagner into the on-going investigation. Luthcke and Wagner spoke with AJ together, but failed to record the interview.

That evening, a group of detectives went to Spiess's residence, where Spiess's mother told the detectives that TM's family had spoken to her and her husband about the party. Spiess's mother provided the detectives a note in TM's handwriting stating that Spiess did not participate in the alleged assaults. Approximately two hours later, Spiess

voluntarily arrived at police headquarters, and Luthcke and another detective interviewed him. Luthcke then prepared search and arrest warrants for Lacen, at whose home the alleged assaults took place. Wagner reviewed the warrants and affidavits of probable cause and spoke with Defendant Rakaczewski, a Monroe County Assistant District Attorney, who approved the warrants.[2] The warrants were then presented to a judge.

The judge granted the search and arrest warrants, and authorities executed a search at Lacen's home. They arrested him shortly before midnight on February 11, 2008. The remaining plaintiffs were variously arrested on February 25, 2008, and March 24, 2008. Authorities charged each plaintiff with multiple counts of rape. Three of the five plaintiffs were minors, but the police officials and Defendant Rakaczewski charged them as adults because AJ claimed plaintiffs used a knife during the assault.

A preliminary hearing was held on March 28, 2008, at which AJ and TM testified, and the plaintiffs were subsequently incarcerated for nearly a

---

[2] Rakaczewski served as the sexual assault prosecutor in the District Attorney's Office. Relevant here, in the spring of 2006 and October of 2007, AJ made allegations of sexual abuse against a family member, which the police determined to be unfounded but forwarded the case to Rakaczewski. Rakaczewski declined to prosecute based on the police's determination that the allegations were unfounded.

year awaiting trial. In January 2009, however, the District Attorney's Office received a letter from AJ's school stating that she had confessed to giving false statements and testimony. The school's letter indicated that AJ said that the sexual activity had been consensual and that no knife was involved. When Rakaczewski and Luthcke interviewed AJ, she denied the school's allegation. During a second interview, however, AJ confessed to lying about three things: that Spiess assaulted her, the presence of alcohol at the party, and that a knife was involved in the assault. In February 2009, Rakaczewski filed a *nolle prosequi* petition with regard to the charges against all the plaintiffs and consented to the plaintiffs' subsequent expungement petitions.

Based upon Rakaczewski's decision to dismiss the underlying criminal charges, plaintiffs filed the instant civil rights action against Defendants Rakaczewski and Bentzoni (hereinafter "defendants").[3] At the conclusion of discovery, Defendant Rakaczewski filed a motion for summary judgment on plaintiffs' section 1983 false arrest claim, which the court denied on March 26, 2013. (Doc. 124). Defendant Bentzoni also

---

[3] Plaintiffs also named several Pocono Mountain Regional Police Officers as defendants. The Police Defendants, however, settled with plaintiffs on December 19, 2013 and have been dismissed from the instant action. (Doc. 132).

filed a motion for summary judgment on plaintiffs' section 1983 false arrest and false imprisonment claim and plaintiffs' malicious prosecution claim. The court granted Defendant Bentzoni's motion for summary judgment on plaintiffs' malicious prosecution claim, but denied Bentzoni's motion for summary judgment regarding plaintiffs' false arrest and false imprisonment claim.  (Doc. 124).  Therefore, the only remaining claim against Defendant Rakaczewski is false arrest and the remaining claims against Defendant Bentzoni are false arrest and false imprisonment.

**Discussion**

A pretrial conference has been scheduled, and in accordance with the court's rule, the parties filed various motions in limine seeking to preclude evidence from trial.  The court will first address plaintiffs' motions.

**I.  Plaintiffs' motions in limine**

Plaintiffs have filed five (5) motions in limine.  The court will discuss each motion *in seriatim*.

**A. Plaintiffs' settlement with police defendants**

Plaintiffs first seek to preclude from trial evidence that they settled their claims with the Pocono Mountain Regional Police Department

(hereinafter "police defendants"). Plaintiffs contend the settlement is not relevant. Defendants assert the settlement amount is relevant to a setoff calculation–the verdict amount must be reduced by plaintiffs' settlement with the police defendants. After careful consideration, the court agrees with plaintiffs.

Federal law provides that relevant evidence is generally admissible. FED. R. EVID. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

Plaintiffs' settlement with the police defendants, however, is not relevant. The settlement agreement does not make the existence of any fact of consequence in the instant civil rights false arrest and false imprisonment action more or less probable. Moreover, section 1983 litigation serves a dual purpose: (1) protect the constitutional rights of individual citizens and (2) punish those who violate an individual's constitutional rights. Allowing the defendants a setoff would further neither of these purposes. As such, the court will preclude from trial evidence that plaintiffs settled their claims against the police defendants.

**B. Plaintiff Jose Lacen's juvenile conviction**

Plaintiffs' next motion in limine seeks to preclude from trial evidence regarding a different juvenile sexual assault prosecution against Plaintiff Lacen. Defendants agree that evidence of Lacen's juvenile adjudication is inadmissable pursuant to Federal Rule of Evidence 609(d), stating that evidence of a juvenile adjudication is not admissible in a civil proceeding for impeachment purposes. Fed. R. Evid. 609(d). Defendants assert, however, that Lacen's juvenile adjudication should be admitted for other purposes including damages. Specifically, Lacen's subsequent juvenile adjudication speaks directly to his claims that he was stigmatized as a rapist, by the underlying criminal charges in this case, which diminished his reputation and employment opportunities.

The court agrees that evidence of Lacen's subsequent juvenile sexual assault adjudication is relevant evidence regarding damages. Relevant evidence, however, may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In the instant matter, the probative value of Lacen's juvenile adjudication is substantially outweighed by confusing the issues and misleading the jury.  The central issue the jury must determine is whether the defendants had probable cause to arrest plaintiffs in February 2008.  The fact that authorities subsequently charged Lacen with rape in another case has no bearing on what the defendants did or did not do prior to arresting plaintiffs and is misleading and confusing.  Therefore, evidence of Lacen's juvenile sexual assault prosecution, while he was incarcerated in this case, will be precluded from trial.

**C.  Dr. Andrea Taroli's testimony[4]**

Plaintiffs also seek to limit Dr. Taroli's testimony regarding her actions and statements on February 11, 2008–the day Detective Luthcke and Defendant Bentzoni took AJ to her for a forensic interview and examination.  Plaintiffs argue that opinions Dr. Taroli expressed in her deposition regarding AJ's credibility and whether or not plaintiffs anally raped AJ were not conveyed to Detectives Luthcke and Bentzoni on February 11, 2008, and therefore must be excluded.

---

[4] Dr. Andrea Taroli, Medical Director of the Pegasus Comprehensive Assessment Center, performed a forensic interview and examination of AJ on February 11, 2008.

8

Defendants assert that Dr. Taroli should be permitted to testify regarding her interview and exam of AJ on February 11, 2008. Additionally, defendants contend Dr. Taroli should be permitted to testify about any and all written reports she generated after February 11, 2008. After careful consideration, the court will limit Dr. Taroli's testimony to her forensic interview and examination of AJ and what she conveyed to Detectives Luthcke and Bentzoni on February 11, 2008.

As previously stated, the central issue in the instant matter is whether or not probable cause to arrest plaintiffs existed on February 11, 2008.  Therefore, any statement Dr. Taroli made or opinion she offered after this date is irrelevant because it does not have the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  FED. R. EVID. 401.  Moreover, the probative value of Dr. Taroli's subsequent opinions is substantially outweighed by unfair prejudice and confusion of the issues and would therefore be excluded under Federal Rule of Evidence 403.  Accordingly, Dr. Taroli's testimony will be limited to her forensic interview and examination of AJ on February 11, 2008, and the information she conveyed to Detectives Luthcke and Bentzoni on that

9

same day.

**D. Statements from plaintiffs' criminal defense attorneys**

Plaintiffs next move to preclude from trial evidence regarding statements from plaintiffs' criminal defense attorneys. Specifically, one or more of plaintiffs' criminal defense attorneys made statements commending the police and the district attorney's office for their handling of the investigations, following the dismissal of the criminal charges against plaintiffs. Defendants do not object to this motion in limine. Ergo, the court will grant plaintiffs' motion in limine on this issue as unopposed.

**E. Testimony regarding police detectives' or defendants' belief that plaintiffs raped AJ and TM**

Plaintiffs' final motion in limine seeks to preclude from trial any evidence regarding defendants' and police detectives' beliefs that plaintiffs raped AJ and TM. The parties agree that this evidence is relevant evidence but dispute whether Federal Rule of Evidence 403 requires its exclusion.[5]

---

[5] Defendants also assert that plaintiffs' motion must be denied because defendants knowledge and belief that plaintiffs raped AJ and TM speaks directly to plaintiffs malicious prosecution claim against Defendants Rakaczewski and Bentzoni. A review of the docket in this matter, however, establishes that plaintiffs' amended complaint only asserts a malicious prosecution claim against Bentzoni, not Rakaczewski.

The law provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  Plaintiffs contend that this evidence creates unfair prejudice because plaintiffs' criminal charges were dropped and their records expunged.  Any mention of the defendants' and police detectives' beliefs that plaintiffs raped AJ and TM is therefore highly prejudicial.  The court disagrees.

The probative value of defendants' actions, and the reasons for them, is high because they address the fundamental issue in this case–whether probable cause existed in February 2008 to arrest plaintiffs.[6]  Additionally, the defendants' and police detectives' beliefs that plaintiffs raped AJ and TM is not unfairly prejudicial because the plaintiffs

---

(Doc. 63, Am. Compl. at 10, 50-52).  Furthermore, the court granted Bentzoni's  motion for summary judgment regarding plaintiffs' malicious prosecution claim.  (Doc. 124 at 59).  Accordingly, a malicious prosecution claim no longer exists against any defendant in this case.

[6]  Moreover, what actions the defendants took, and whether those actions were reasonable, is material to their qualified immunity claims.

will be able to fully explore this issue through cross examination and argument. Thus, the court will deny plaintiffs' motion in limine regarding defendants' and police detectives' beliefs that plaintiffs raped AJ and TM.

## II. Defendants' motions in limine

Defendants have likewise filed several motions in limine. The court will address each in turn.

## A. Kadeem Allison claims and testimony

Defendants seek to exclude from trial evidence regarding charges defendants initially filed against Kadeem Allison, which they subsequently withdrew. Defendants assert this evidence is irrelevant and unfairly prejudicial. Plaintiffs contend that this evidence is relevant because it demonstrates that AJ and TM lied to defendants on February 11, 2008, which addresses the central issue of this case–whether defendants had probable cause to arrest plaintiffs for rape. After careful consideration, the court agrees with plaintiffs.

On February 11, 2008, AJ and TM stated to the police and defendants that plaintiffs and a number of other individuals, including Kadeem Allison, raped them. Based on these statements, defendants arrested Kadeem Allison for rape on March 18, 2008. The charges

against Kadeem Allison, however, were dropped the very next day because defendants quickly determined, after they arrested Kadeem Allison, that he had an alibi for the night in question.

This evidence is clearly relevant because it may demonstrate that AJ and TM lied on a material issue when they provided their one and only statement to police on February 11, 2008. Further, defendants' conclusory assertion that this evidence is prejudicial is without merit. Defendant cites no authority, and our research has uncovered none, to support their assertion that evidence pertaining to the charges against Kadeem Allision is unfairly prejudicial. Indeed, the Third Circuit Court of Appeals requires the opposite conclusion. See Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980) (noting that Rule 403 does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is **unfairly** prejudicial.)

As previously discussed, the probative value of Kadeem Allison's arrest is high because it speaks directly to whether or not defendants had probable cause to arrest plaintiffs for rape. Additionally, while the initiation of charges against Kadeem Allison and their subsequent dismissal the

very next day may be prejudicial in the sense of being detrimental to defendants' case, the court finds nothing **unfairly** prejudicial regarding this evidence.  In short, this evidence is relevant and its probative value is not substantially outweighed by unfair prejudice.  As such, defendants' motion to preclude this evidence will be denied.

## B.  Alleged racial comments made by police

Defendants next seek to exclude from trial evidence regarding alleged racial comments made by the police during plaintiffs' interrogations.  Plaintiffs agree that they will not introduce evidence that any of the police officers made racially inappropriate comments to plaintiffs during their interrogations.  Therefore, defendants' motion will be granted as unopposed.

## C.  Refusal to prosecute TM and AJ for perjury

Defendants also seek to preclude from trial any evidence pertaining to Defendant Rakaczewski's failure to prosecute AJ and TM for perjury after the preliminary hearing on plaintiffs' rape charges.  Plaintiffs argue that AJ and TM's testimony from the preliminary hearing is admissible because it is relevant and addresses issues of credibility.   After careful consideration, the court agrees with defendants in part.

The court will exclude from trial any reference to the filing of perjury charges against AJ and TM after the preliminary hearing. The filing of perjury charges is not relevant. What is relevant, however, is that the police defendants recognized discrepancies in AJ and TM's stories, that the police defendants discussed these issues with Defendant Rakaczewski and that, apparently, the police defendants and Rakaczewski failed to investigate the discrepancies while plaintiffs remained incarcerated for almost a year. Moreover, this evidence is relevant because it addresses issues of AJ and TM's credibility–a central theme to the core issue of whether or not defendants had probable cause to arrest plaintiffs. Accordingly, the court will exclude from trial any evidence pertaining to the police defendants statements or opinions regarding the filing of perjury charges against AJ and TM.

**D. Victims' subsequent criminal history**

Defendants' next motion in limine seeks to preclude from trial evidence of AJ's and TM's subsequent criminal history. Defendants assert this evidence is not relevant. Plaintiffs argue that AJ's and TM's subsequent criminal history is relevant with respect to impeaching the girls' credibility.

The Federal Rules of Evidence allow impeachment of a witness by evidence of her conviction for a crime if "it can readily be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." FED. R. EVID. 609(a)(2).  Such crimes are referred to as *crimen falsi*.

The Third Circuit Court of Appeals has determined that petit larceny and theft are not *crimen falsi* crimes.  See Government of Virgin Islands v. Testamark, 528 F.2d 742 (3d Cir. 1976) (petit larceny); United States v. Johnson, 388 F.3d 96, 100-02 (3rd Cir. 2004) (theft).  The Third Circuit, however, has not yet determined whether retail theft under 18 PA. CONS. STAT. ANN § 3929(a)(1) (hereinafter "section 3929(a)(1)") is a *crimen falsi* crime.

Section 3929(a)(1) provides that a person is guilty of retail theft if she "takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof."  18 PA. CONS. STAT. ANN. 3929(a)(1).  No element of this crime requires a

dishonest or false statement. Rather, the elements describe actions akin to pickpocketing, which involves no *crimen falsi*. As such, the alleged victims' theft and shoplifting convictions have little, if any, impeachment value and do not bear on their propensity to testify truthfully in the instant matter. Furthermore, admitting evidence of these convictions would serve no proper purpose and would only unfairly prejudice defendants. Ergo, the court will exclude from trial evidence of the alleged victims' subsequent criminal history.

**E.  Expert opinions regarding Rakaczewski's fitness as a prosecutor**

Defendants final motion in limine seeks to exclude from trial any testimony from plaintiffs' expert Dr. Ron Martinelli, regarding his opinion that Rakaczewski lacked the necessary experience and/or training to prosecute sexual assault cases. Plaintiffs do not intend to elicit any expert testimony from Dr. Martinelli regarding Rakaczewski's fitness or actions as a prosecutor. Instead, plaintiffs will limit Dr. Martinelli's testimony to Rakaczewski's fitness and performance of his duties in an investigative capacity, which is relevant in the instant matter. Thus, defendants' motion to preclude from trial any evidence from Dr. Martinelli regarding Rakaczewski's fitness as a prosecutor will be granted as unopposed.

**Conclusion**

For the reasons set forth above, the parties' motions in limine will be granted in part and denied in part. Plaintiffs' motions will be granted to the extent that the court will preclude from trial any evidence regarding plaintiffs' settlement with the police defendants. The court will also exclude evidence of Plaintiff Jose Lacen's juvenile sexual assault prosecution. Furthermore, the court will limit Dr. Taroli's testimony to her forensic interview and examination of AJ on February 11, 2008, and any and all information she conveyed to Detectives Luthcke and Bentzoni on that day. The court grants, as unopposed, plaintiffs' motion to preclude statements plaintiffs' criminal defense attorneys made following the dismissal of the criminal charges against plaintiffs. Finally, the court will deny plaintiffs' motion in limine to exclude from trial any evidence pertaining the defendants' and police detectives' beliefs that plaintiffs raped AJ and TM.

The court will deny defendants' motion in limine regarding charges against Kadeem Allison. The court grants, as unopposed, defendants' motion to exclude from trial evidence regarding the police detectives' alleged racial comments made during plaintiffs' interrogations.

Defendants' motion to preclude from trial any evidence pertaining to Defendant Rakaczewski's failure to prosecute AJ and TM for perjury after the preliminary hearing is granted.  The court will also exclude from trial any evidence of the alleged victims' subsequent criminal histories.  Finally, the court grants as unopposed defendants' motion to preclude from trial any evidence from Dr. Martinelli regarding Defendant Rakaczewski's fitness as a prosecutor.

    The court further notes that the central issue the jury must determine is whether the defendants had probable cause to arrest plaintiffs in February 2008.  To reach this conclusion, the jury must determine what actions defendants took and whether their actions were objectively reasonable.  If the jury determines defendants' actions were unreasonable in arresting plaintiffs without probable cause, the jury will then address whether plaintiffs suffered any damages as a result of the violation of their constitutional rights.  An appropriate order follows.

**Date:   01/14/15**                             **s/ James M. Munley**
                                                             **JUDGE JAMES M. MUNLEY**
                                                              **United States District Court**